

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BENJAMIN DOUGLAS MORRIS, | ) ) ) | Case No.:  12-12886-JDW |
| | ) | |
| Debtor. | ) | Chapter 11 |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT (DKT. # 175) AND DENYING DEBTOR'S MOTION FOR SUMMARY JUDGMENT (DKT. # 201)

This matter came before the Court on the *United States' Motion for Summary Judgment*[1] (the "IRS's Motion") filed by creditor United States of America, on behalf of the Internal Revenue Service (the "IRS") and the *Debtor's*

---

[1] (Dkt. # 175).

1

*Motion for Summary Judgment*[2] (the "Debtor's Motion") filed by debtor Benjamin Douglas Morris.

At a status conference held on August 22, 2025, the parties agreed that the sole issue to be decided at this stage is whether the automatic stay under 11 U.S.C. § 362(a) remained in effect after the closure of debtor's bankruptcy case.[3] The issue arises because on October 31, 2014, the debtor filed a motion to close his chapter 11 case for "administrative purposes." That motion was granted, and the bankruptcy case was closed on December 16, 2014. The debtor never sought to reopen his case to obtain a discharge. After the case was closed, the IRS initiated several collection actions against the debtor for prepetition trust fund recovery penalties. The debtor contends that the IRS's collection efforts violated the automatic stay, which he contends remained in effect following the closure of the case. The IRS argues that the stay was terminated when the case was closed.

Having considered the parties' stipulated facts, the docket, the arguments, and relevant law, the Court concludes that the IRS's Motion is due to be granted in part, and the Debtor's Motion is due to be denied, because the automatic stay terminated when the case was closed. It follows that the IRS cannot be sanctioned for violating the stay when no stay existed.

---

[2] (Dkt. # 201).
[3] (Dkt. # 190).

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a), and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A) and (O).

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] The party seeking summary judgment bears the burden of demonstrating to the court the absence of a genuine issue of material fact.[5] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party."[6] All reasonable doubt as to the

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing former Fed. R. Civ. P. 56(c)); *see also* Fed. R. Civ. P. 56(c)(1). Fed. R. Civ. P. 56 is made applicable by Fed. R. Bankr. P. 7056 and 9014(c)(1).
[5] *Celotex Corp.*, 477 U.S. at 323.
[6] *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

existence of a genuine issue of material fact must be resolved against the moving party.[7]

Here, the parties have filed cross-motions for summary judgment, shifting the burden to each movant on its motion.[8] The parties have also, however, stipulated to the material facts necessary to decide each motion, leaving no other material facts for the court to find at this stage.

### III. FINDINGS OF FACT AND PROCEDURAL HISTORY

Pursuant to the parties' agreement and this Court's Order dated August 25, 2025,[9] the parties submitted a Joint Stipulation of Facts[10] to serve as the evidence the Court will consider in deciding the limited issue here. The Joint Stipulation of Facts is reproduced below verbatim:

> It is hereby stipulated by and among the parties through their respective counsel [of] record as follows:
>
> 1. On July 13, 2012, Benjamin Douglas Morris ("Debtor" or "Morris") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (Dkt. # 1).
>
> 2. The bar date for a governmental unit to file a proof of claim was January 9, 2013. (Dkt. # 16).
>
> 3. On August 10, 2012, the IRS filed Proof of Claim 1-1 setting forth an unsecured priority claim in the amount of $78,996.07 for federal income tax liabilities for tax years 2010 and 2011. *See* Claim 1-1. This amount was based on estimates because Morris had not yet filed his returns for these tax years. *See id.*

---

[7] *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980).
[8] *Duval v. N. Assurance Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).
[9] (Dkt. # 190).
[10] (Dkt. # 197).

4

4. Once the 2010 and 2011 federal income liabilities were assessed, the IRS filed an Amended Proof of Claim 1-2 on September 6, 2012, adjusting the balances of Debtor's outstanding federal income tax liabilities for tax years 2010 and 2011 to $0.00. *See* Claim 1-2.

5. On April 14, 2014, Debtor filed its Disclosure Statement (Dkt. # 89), which the Court approved on August 4, 2014. (Dkt. # 104); (Dkt. # 105).

6. On July 22, 2014, Debtor filed its First Amended Plan of Reorganization (the "Plan") to pay claims over 60 months (Dkt. # 101). The Plan contained language in Article IX, Jurisdiction of the Court, that states in part that the Court retains jurisdiction for "determination of all causes of action, controversies, disputes and conflicts, whether or not subject to action pending as of the Confirmation date, between the Debtor and any party, including, but not limited to, the right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code."

7. The Court entered its *Order Confirming First Amended Plan of Reorganization* (the "Confirmation Order") on October 20, 2014. (Dkt. # 114).

8. The Debtor did not receive a discharge upon confirmation of the Plan. The Confirmation Order contains an ORDERED, ADJUDGED AND DECREED paragraph that states "that the Debtor shall be granted a discharge only upon completion of all payments under the Plan. The bankruptcy case may be closed, for administrative purposes, before all payments are made in order to avoid further United States Trustee fees. Upon completion of all payments under the Plan, Debtor's counsel shall so notify the Court that payments have been completed and the discharge shall thereupon be granted."

9. The Confirmation Order contains an ORDERED, ADJUDGED AND DECREED paragraph that states "that subsequent to the entry of this Order, the Court shall retain jurisdiction relating to this case as provided under the Plan, including, without limitation, jurisdiction over all disputes arising out of the Plan. In addition, the Court shall retain jurisdiction for the administration and adjudication of objections to claims and the

5

allowance of claims during the course of the Chapter 11 proceeding, including any and all claims against the Debtor that arose prior to and during the course of this Chapter 11 proceeding herein in accordance with the terms and provisions of the Plan and the Order Confirming the Plan of Reorganization."

10. On October 31, 2014, Debtor filed a Motion to Close Chapter 11 Case. (Dkt. # 119). The Court granted this motion on December 16, 2014, by entering its Order Granting Motion to Close Chapter 11 Case (the "Closing Order") (Dkt. # 130). The Court entered its *Final Decree/Order Closing Case (All Chapters)* (the "Final Decree/Order Closing Case") that closed the bankruptcy case on the same day. (Dkt. # 132).

11. The Closing Order states in part that the "Court will retain jurisdiction over the Debtor with respect to the filing of his Monthly Operating Reports (through the date the case is closed) and payment of his fees due to the Office of the United States Trustee (also through the date of closing); and any other matters of administration which have not yet been resolved by the Bankruptcy Court or otherwise concluded."

12. BNC notice of the Order Granting Motion to Close Chapter 11 Case and of the Order Closing Case was sent to interested parties on December 18, 2014. *See* (Dkt. # 133); (Dkt. # 134).

13. On August 27, 2024, the Debtor filed his *Motion to Reopen Chapter 11 Case* (the "Motion to Reopen"). (Dkt. #138).

14. On October 8, 2024, the United States filed its *Response* (Dkt. #145) to the Debtor's Motion to Reopen.

15. On October 16, 2024, the Court held a hearing on the Debtor's Motion to Reopen. *See* (Dkt. # 139). On October 18, 2024, the Court ultimately entered its *Order Reopening Case* (Dkt. # 146) that reopened this Chapter 11 case.

16. On January 29, 2025, the Debtor filed his *Motion to Enforce Automatic Stay and for Sanctions* (the "Motion to Enforce Automatic Stay") (Dkt. #149) against the IRS.

17. On April 14, 2025, the United States filed its *Response*

6

*in Opposition* (Dkt. #162) to the Debtor's Motion to Enforce Automatic Stay.

18. On July 28, 2025, the United States filed its *Motion for Summary Judgment* (Dkt. # 175) (the "United States' Motion for Summary Judgment"). The United States' Motion for Summary Judgment included a statement of undisputed material facts, exhibits, and a memorandum brief in support. (Dkt. ## 175-1, 175-2, 175-3, 175-4).

19. On August 20, 2025, the Debtor filed his *Opposition and Response* to the United States' Motion for Summary Judgment, his memorandum brief in support, his response to the United States' statement of undisputed material facts, and an attorney declaration. (Dkt. ## 181, 182, 183, 184, and 185).

20. On August 29, 2025, the United States filed its *Reply in Support of the United States' Motion for Summary Judgment* (the "United States' Reply"). (Dkt. # 196). The United States Reply included a Response to Debtor's Statement of Facts. (Dkt. # 196-1).

21. The Debtor was a principal of Dalphis Holdings, LLC.

22. On October 21, 2014, the IRS assessed trust fund recovery penalties ("TFRP") pursuant to 26 U.S.C. § 6672 against Morris as a responsible officer of Dalphis Holdings, LLC for tax period ending December 31, 2010, in the amount of $151,289.42.

23. On March 2, 2015, the IRS assessed against Morris TFRPs pursuant to 26 U.S.C. § 6672 against Morris as a responsible officer of Dalphis Holdings, LLC for tax period ending December 31, 2011, in the amount of $337,416.14.

24. The Form 4340 for Debtor's 2010 TFRP liabilities contains entries of a "legal/bankruptcy proceeding" on July 13, 2012, and "legal/bankruptcy proceeding no longer pending" on June 27, 2019.

25. Between October 2019, and June 2024, the IRS took several collection actions to collect the TFRP liabilities from Debtor.

26. Debtor's counsel submitted a letter by fax to the IRS dated December 16, 2021, arguing that IRS actions to collect Debtor's TFRPs violated the automatic stay.

27. The Debtor also filed various notices of appeal which were never completely or fully addressed, and in some in instances, not addressed at all.

28. There has been no Final Decree other than the one this Court entered on December 16, 2014.[11]

## IV. CONCLUSIONS OF LAW

When a debtor files a bankruptcy case under chapter 11 of the Bankruptcy Code,[12] section 362(a) provides an automatic stay that generally "prevents creditors from taking any collection actions against the debtor or the property of the debtor's estate for pre-petition debts."[13] Unless the bankruptcy court grants relief from the stay, the stay remains in effect until the property at issue "is no longer property of the estate" or "until the earliest of— (A) the time the case is closed; (B) the time the case is dismissed; or (C) . . . the time a discharge is granted or denied."[14]

The debtor asserts that "although the Plan payments have been completed for some time now, the Debtor has not received a discharge and, as a result, the automatic stay provisions of 11 U.S.C. § 362 remain in full force

---

[11] *Id.*
[12] "Bankruptcy Code" refers to 11 U.S.C. §§ 101-1532. Unless otherwise noted, all statutory references herein are to the Bankruptcy Code.
[13] *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008).
[14] 11 U.S.C. § 362(c)(1)-(2); *see also Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012).

8

and effect."[15] The debtor is correct that he has not received a discharge because he never sought a discharge. More importantly, the debtor overlooks the remainder of section 362(c)(2), which provide other trigger points for termination of the stay, the earliest of which applies.[16] Applying the plain language of section 362(c)(2)(A) to the Joint Stipulation of Facts,[17] the earliest trigger point occurred when debtor's case was closed, on the debtor's own motion, on December 16, 2014.[18] The automatic stay terminated on that day.

The debtor further argues that despite his case being closed, the automatic stay remained in effect because "[t]his case was closed for administrative purposes only, so the automatic stay provisions remained in effect after closing, the automatic stay has remained in effect, and the automatic stay remains in effect now."[19] The term "administrative closure" is not recognized in the Bankruptcy Code, but courts, including this Court, have sometimes allowed debtors to close cases to avoid paying U.S. Trustee ("UST") fees between confirmation and when a case is ripe for a discharge after completion of plan payments.[20] The debtor cites to no case law to support his

---

[15] (Dkt. # 202, p. 7).
[16] 11 U.S.C. § 362(c)(2).
[17] (Dkt. # 197).
[18] (Dkt. ## 119, 132); 11 U.S.C. § 362(c)(2)(A).
[19] (Dkt. # 202, p. 7).
[20] *See, e.g., In re Kerley*, No. 09-43154-JJR11, 2011 WL 5330667, at *2 (Bankr. N.D. Ala. Nov. 4, 2011) ("[A]lthough 'administrative closing' is not a concept set out anywhere in the Code and Bankruptcy Rules, it has been embraced by some courts as an expeditious means of circumventing the problematic issue of when a case is 'fully administered' for purposes of closing an individual chapter 11 debtor's case prior to the entry of discharge in an effort to

9

position that the automatic stay remained in effect post-closure. By contrast, many courts have concluded that an administrative closing terminates the stay.[21] The debtor must take the good with the bad. While closure of the case relieves the debtor of the expense of UST fees, it also terminates the automatic stay.[22]

At times, some courts have fashioned equitable remedies to preserve the automatic stay after an administrative closure, but those cases required an affirmative stay extension by those courts.[23] The leading example comes from *In re Mendez* where the court exercised its power under section 105(a) to close the case for administrative purposes, while preserving the automatic stay, to "afford the debtor relief from his ongoing obligation to pay UST fees and not cause more harm than good."[24] The *Mendez* court explicitly acknowledged that the automatic stay would have been terminated by section 362(c)(2)(A) but for

---

boost the Debtor's cash flow by avoiding quarterly fees."); *In re Necaise*, 443 B.R. 483, 493-94 (Bankr. S.D. Miss. 2010) (holding an individual Chapter 11 debtor may close their bankruptcy case subject to it being re-opened after the completion of plan payments in order for the Debtor to request entry of a discharge order); *In re Johnson*, 402 B.R. 851, 857-58 (Bankr. N.D. Ind. 2009) (holding that considering a lack of any objections from creditors, an individual Chapter 11 debtor may close their bankruptcy case prior to discharge to avoid paying quarterly fees to the U.S. Trustee).

[21] *See, e.g., In re Houlik*, 481 B.R. 661, 669-70 (B.A.P. 10th Cir. 2012) (finding the automatic stay terminated under § 362(c) when the case was closed for administrative purposes); *accord In re Mendez*, 464 B.R. 63, 66 (Bankr. D. Mass. 2011); *In re Kerley*, 2011 WL 5330667, at *2; 9A Collier on Bankruptcy ¶ 3022.04 (16th ed. 2025) ("Some courts have observed that closing a chapter 11 case is a mere administrative act. There are, however, several consequences of case closure that should be kept in mind. First, closure terminates the automatic stay. . ..").

[22] *In re Houlik*, 481 B.R. at 669-70.

[23] *In re Mendez*, 464 B.R. at 66.

[24] *Id.*

10

the additional court-issued order continuing the stay under section 105(a).[25] No such affirmative grant of a court-ordered stay was requested here or ordered by the Court.

Finally, the debtor argues that the stay was preserved by the Confirmation Order and Closing Order.[26] But neither of those orders referenced the automatic stay, let alone contained an affirmative ruling that the stay would remain in effect. In the Closing Order, the Court did "retain jurisdiction over the Debtor with respect to . . . any other matters of administration which have not yet been resolved by the Bankruptcy Court or otherwise concluded."[27] But a retention of jurisdiction is not a preservation of the stay. Courts always have the power to enforce their own orders,[28] and a retention of jurisdiction confirms that this Court may continue to interpret and enforce the Confirmation Order.[29] The United States Court of Appeals for the Fifth Circuit has held that bankruptcy courts retain subject matter jurisdiction to protect a debtor's rights under the Bankruptcy Code after a bankruptcy case is closed, but this principle has never been interpreted to expand the automatic

---

[25] *Id.*
[26] (Dkt. ## 114, 130).
[27] (Dkt. # 130, p. 2).
[28] *In re RE Palm Springs II, L.L.C.*, 106 F.4th 406, 413 (5th Cir. 2024) ("Federal courts have the 'unquestionable power to enforce [their] own decrees.'") (quoting *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 452 (5th Cir. 2022)).
[29] (Dkt. # 114).

11

stay beyond closure.[30] Such a rule would arguably leave the automatic stay in effect for perpetuity. That is not the purpose of the stay, it is the purpose of the discharge injunction[31]—which the debtor never sought nor obtained.

## V. CONCLUSION

The plain language of 11 U.S.C. § 362(c) and supporting case law make clear that termination of the automatic stay is triggered by the earliest time the case is closed, dismissed, or when a discharge is granted or denied.[32] The Joint Stipulation of Facts[33] show the case closing was the earliest trigger to occur, so the automatic stay terminated when debtor's case was closed on December 16, 2014.[34] The IRS cannot be sanctioned for the collection actions between October 2019 and June 2024 because the automatic stay was no longer in effect.[35] Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED** that the *United States' Motion for Summary Judgment* is **GRANTED IN PART** in that the automatic stay terminated when the bankruptcy case closed, and the IRS cannot be sanctioned for the collection actions between October 2019 and June 2024. The

---

[30] *See In re Burch*, 835 F. App'x 741, 748 (5th Cir. 2021); *In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016); *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 390 (5th Cir. 2001); *In re Bradley*, 989 F.2d 802, 804-05 (5th Cir. 1993).
[31] *See In re Coho Res., Inc.*, 345 F.3d 338, 343-44 n.16 (5th Cir. 2003).
[32] 11 U.S.C. § 362(c)(2)(A)-(C).
[33] (Dkt. # 197).
[34] *Id.*
[35] *In re Houlik*, 481 B.R. at 669-70 ("Thus, any stay of actions against the [debtors] terminated when their case was closed. . ..").

12

*Debtor's Motion for Summary Judgment* is **DENIED**. A status conference will be **SCHEDULED** by separate order to discuss any remaining issues in this adversary proceeding.

##END OF ORDER##